Tommy Joe WYKLE, Plaintiff-Appellant,

v.

VALLEY FIDELITY BANK & TRUST COMPANY, Donald L. Hutcheson and Lester Fox, Defendants-Appellees.

Court of Appeals of Tennessee, Eastern Section.

Jan. 18, 1983.

Application for Permission to Appeal Denied by Supreme Court Aug. 1, 1983.

James W. Bell, Knoxville, for plaintiff-appellant.

Michael L. Powell and Robert B. Ray, Knoxville, for Valley Fidelity Bank and Donald L. Hutcheson.

Ronald C. Koksal, Knoxville, for Lester Fox.

OPINION

GODDARD, Judge.

Tommy J. Wykle, Plaintiff-Appellant, appeals the dismissal of his suit sounding principally in malicious prosecution against Valley Fidelity Bank, one of its Vice-Presidents, Donald L. Hutcheson, and Lester Fox, a customer of the Bank who was associated with an automobile dealership in Oak Ridge. The case was dismissed upon the Defendants' motion for summary judgment. By this appeal, Mr. Wykle insists that there are material issues of fact making summary judgment inappropriate.

The Trial Court, upon considering the pleadings and the deposition of attorney Philip Durand, who represented the Bank when the criminal prosecution against the Plaintiff was initiated, concluded that the defense of advice of counsel had been sustained and dismissed the case against all Defendants.

We will now review the facts shown in the record, accepting as true those contained in Mr. Durand's deposition, there being no counter-affidavit or depositions, as well as all allegations contained in the complaint not traversed in his deposition.

On or about August 10, 1979, Ivey Whittaker purchased a 1979 Oldsmobile Cutlass automobile from Fox Dodge, Inc., under a conditional sales contract. This contract was assigned with full recourse to Valley Fidelity Bank and Trust Company, which purportedly also acquired a lien on the automobile. Through mistake, the lien was never noted on the title. Thereafter, Mr. Whittaker traded the Oldsmobile to the Plaintiff for a Ford van. The Plaintiff eventually sold the Oldsmobile to a bona fide purchaser.

In December Lester Fox contacted the Plaintiff regarding the indebtedness owed on the Oldsmobile, and the Plaintiff in turn talked to Mr. Whittaker, who advised him that the indebtedness was an unsecured personal one. At the time of this conversation, the Plaintiff learned that Mr. Whittaker was driving a Toyota[1] which he had obtained from Fox Dodge by trading a Dodge Diplomat which he had also acquired from Fox Dodge by trading the van acquired from the Plaintiff.

On January 24, 1980, Mr. Hutcheson was advised by Bruce Fox, an attorney and the son of Lester Fox, who was, we gather, the principal stockholder of Fox Dodge, that earlier in the day the Plaintiff had admitted knowing that there was an indebtedness still owed on the Oldsmobile when he sold it.

Armed with this information, Mr. Hutcheson on the same day contacted the attorney for the Bank, Mr. Durand, and presented him his entire file. Mr. Durand made some further investigation and concluded that the statement of Mr. Fox regarding the Plaintiff's knowledge of the indebtedness, coupled with his active participation in signing and acknowledging a bill of sale, gave probable cause for securing a warrant for violation of T.C.A. 39–3–927 relative to disposing of encumbered property. Whereupon, he assisted Mr. Hutcheson in obtaining a warrant, which was issued on January 31.

After a preliminary hearing, the case was dismissed for want of probable cause, and although the matter was later presented to the Grand Jury (the Plaintiff waived his immunity and testified in this proceeding), no indictment was ever returned.

As already noted, the Trial Court felt that there was no material factual dispute as to the validity of the advice of counsel defense and rendered judgment accordingly.

The rule as to advice of counsel was promulgated as early as 1904 in *Cooper v. Flemming,* 114 Tenn. 40, 84 S.W. 801, and by a number of cases since, including a most recent one from this Court, *Mitchell v. George,* 63 Tenn.App. 408, 427, 474 S.W.2d 131, 138 (1971), in which the Court stated the following:

> It has been held that where the advice of counsel has been honestly sought on all the material facts relating to the case, ascertainable by due diligence, and a prosecution is commenced on such advice the prosecutor is entitled as a matter of law, to immunity from damages for malicious prosecution. *Peoples Protective Life Insurance Co. v. Neuhoff* (1966), 56 Tenn.App. 346, 407 S.W.2d 190, *Cooper v. Flemming* (1904), 114 Tenn. 40, 84 S.W. 801, 68 L.R.A. 849.

While we believe that Mr. Hutcheson had a right to rely upon his counsel's

1. On the date Mr. Durand's deposition was taken the Toyota had been repossessed and was in the possession of the Bank.

knowledge regarding the sufficiency and reliability of the hearsay information and whether further contract should be made with Lester Fox (incidentally, it appears that Mr. Fox testified at the preliminary hearing just as reported by his son), we do not believe a summary judgment was properly granted where we have no affidavit or deposition from Mr. Hutcheson that he honestly and reasonably believed that Mr. Wykle was guilty. Moreover, while it is true that Mr. Durand believed that he had received all of the material facts available to Mr. Hutcheson, there is nothing in the record from Mr. Hutcheson to confirm this. In this regard, we think the following allegations found in paragraph VII of the complaint, as amended, are significant:

Shortly after defendant Fox's meeting with the plaintiff, a meeting was held with Attorney, Randy Nichols, who represented Ivy Whitaker. Present at the meeting with Attorney Nichols was Attorney Bruce Fox, Attorney Philip Durand and Donald L. Hutcheson. The purpose of the meeting was to inquire of Attorney Nichols [representing Mr. Whittaker] whether his client could get the indebtedness owed to the bank on the Oldsmobile paid off before warrants were taken out. Attorney Nichols was advised of the amount owing and given until noon the following day to have his client raise the amount. Attorney Nichols advised there was no need for time in that there was no way his client could raise the amount. He at the same time, being experienced in criminal law and having formerly served on the Attorney General's staff, informed the parties that the fact that his client, Whitaker, went straight back to Fox with the vehicle for which he traded the Oldsmobile showed he had no criminal intent. He advised them further to be very careful concerning the taking of any warrants over the matter. At the time of making these statements, Attorney Nichols was fully aware of the claims being made against Whitaker and had been advised by Whitaker that Whitaker had not informed

Wykle at the time of the trade that a debt was owing against the Oldsmobile.

It is true that Mr. Durand discounted the statement of Mr. Nichols. However, the critical question is whether Mr. Hutcheson discounted it. Absent testimony from Mr. Hutcheson that he did not believe this statement, we cannot say that he or the Bank is entitled to summary judgment as a matter of law.

Still further we must remember that the Bank's indebtedness had been endorsed with full recourse by Fox Dodge and the Bank presumably could have been paid in full by merely calling upon Fox Dodge to honor its endorsement. We think this circumstance could raise an unfavorable inference as to the Bank's good faith in prosecuting the Plaintiff.

■ We are of the opinion that summary judgment was properly granted as to Mr. Fox. While it is not necessary that a person actually swear out the warrant to be liable, something more than merely giving information must be shown. Professor Prosser has this to say on the subject:

The defendant may be liable either for initiating or for continuing a criminal prosecution without probable cause. But he cannot be held responsible unless he takes some active part in instigating or encouraging the prosecution. He is not liable merely because of his approval or silent acquiescence in the acts of another, nor for appearing as a witness against the accused, even though his testimony is perjured, since the necessities of a free trial demand that witnesses are not to be deterred by fear of tort suits, and shall be immune from liability. On the other hand, if he advises or assists another person to begin the proceeding, ratifies it when it is begun in his behalf, or takes any active part in directing or aiding the conduct of the case, he will be responsible.

*Prosser on Torts*, 4th Ed., P. 836.

In *Cohen v. Ferguson*, 47 Tenn.App. 165, 177, 336 S.W.2d 949, 954 (1959), an opinion of this Court which is also in accord, Judge

Hickerson, speaking for the Middle Section, first quotes a passage from Corpus Juris Secundum and then from the comments to the Restatement of Torts, First Edition,[2] as follows:

> The same rule is stated in Restatement of the Law of Torts, 383–384, Section 653.
>
> "One who gives to a third person, whether public official or private person, information of another's supposed criminal conduct or even accuses such other thereof, causes the institution of such proceedings as are brought by the third person. The giving of the information or the making of the accusation, however, does not constitute a procurement of the proceedings which the third person initiates thereon if it is left to the uncontrolled choice of the third person to bring the proceedings or not as he may see fit."

In reaching this conclusion we are not unmindful that Mr. Fox's corporation assigned the contract with recourse and that he obviously had an interest in collecting the note. Nonetheless, we are still persuaded that before one can be liable for malicious prosecution, he must do something more than merely give information.

Two other matters will be addressed briefly. First, we are of the opinion that the record does not show facts sufficient to sustain an action for outrageous conduct, nor do we know of a civil action—except in states where their statutes provide for civil penalties[3]—for the crime of extortion, which technically applies only to acts by a public official and as to private parties is more properly termed blackmail.

For the foregoing reasons, the case as to Mr. Fox is affirmed and as to Mr. Hutcheson and the Bank, reversed and remanded for further proceedings. The costs of appeal are adjudged one-half against Mr. Wykle and his surety and one-half against Mr. Hutcheson and the Bank.

PARROTT, P.J., and SANDERS, J., concur.

---

**2.** Comment D under Sec. 653 of the Second Edition follows the quoted passage practically verbatim.

---

**3.** *Damian v. Hernon,* 102 Pa.Super. 539, 157 A. 520 (Pa.Super.1931).