NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0884n.06
Filed: December 7, 2006

No. 05-6861

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| M. Stanley Shipp, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE WESTERN |
| United States of America, | ) DISTRICT OF TENNESSEE |
| | ) |
| Defendant-Appellee. | ) OPINION |

Before:       KEITH, McKEAGUE, Circuit Judges; and CLELAND, District Judge.*

       DAMON J. KEITH, Circuit Judge.   Plaintiff-Appellant M. Stanley Shipp ("Shipp")

appeals the district court's grant of summary judgment dismissing his malicious prosecution claims

arising out of the conduct of a United States postal inspector and brought pursuant to the Federal

Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671, *et seq*.  Because Shipp has failed to demonstrate

the existence of any genuine issue as to the facts that the United States postal inspector acted upon

probable cause and without malice, we **AFFIRM** the district court's decision.

I.  BACKGROUND

A.  Factual Background

_____

       * The Honorable Robert H. Cleland, United States District Court for the Eastern District of
Michigan, sitting by designation.

In March 2000, Walter Watkins ("Watkins") and Dan Swindall ("Swindall")[1] were employed by the United States Postal Service ("Postal Service") in Memphis, Tennessee. Watkins was a letter carrier and delivered mail on a route that included a business owned by Shipp. Swindall was a postal inspector with the United States Postal Inspection Service, the federal law enforcement branch of the Postal Service. Inspector Swindall's duties included investigation of crimes concerning the postal service, such as mail theft, internal theft, robbery of carriers, or threats of violence against carriers.

The events that gave rise to the criminal charges brought against Shipp, which provide the basis for Shipp's malicious prosecution action, are highly contested. Watkins' version of the events are as follows. At some point prior to March 11, 2000, he informed Shipp that the Postal Service required a proper mail receptacle for mail to be delivered to Shipp's business. When Shipp did not acquire a proper mail receptacle, Watkins ceased delivery of mail to Shipp's business. On March 11, 2000, as Watkins was delivering mail in the vicinity of the intersection of Kerr and Woodward Avenues, Shipp, who was driving a gray 1989 Dodge Caravan, accelerated and attempted to run over Watkins while yelling threats and obscenities.

Shipp, on the other hand, paints a strikingly different picture of the March 11, 2000 exchange. At some point prior to March 11, 2000, Shipp reported to Inspector Swindall and Watkins' supervisor, Donald Ray Greer ("Greer"), that he believed Watkins may have been involved in selling or using drugs. According to Shipp, Watkins never advised him of the need for a proper

---

[1] Inspector Swindall's last name also appears in the record with the alternative spelling "Swindle."

mail receptacle, nor did he cease delivery of mail to his business based upon his lack of such a receptacle. Shipp denies ever having attempted to run down Watkins with his van or having used threats or profanities against him. Rather, Shipp claims that on the date in question, he stopped his van on the other side of the street from Watkins and had a conversation with him about the non-delivery of his mail. Watkins informed Shipp that his mail was being held at the postal station. Shipp had no further contact with Watkins and proceeded directly to the postal station where he retrieved his mail from Greer.

It is undisputed that Watkins used a telephone at a residence located at 1112 Kerr Avenue to call the postal station and report his version of the incident to his supervisor Greer. Greer in turn contacted the United States Postal Inspection Service. During a follow-up call to the United States Postal Inspection Service, Greer informed Inspector Swindall of Watkins' report. While at the 1112 Kerr Avenue residence, Watkins also telephoned the Memphis Police Department ("MPD"). In response to the call, MPD officers went to the scene of the alleged assault and conducted a preliminary investigation.

On March 13, 2000, Inspector Swindall interviewed Watkins regarding the March 11, 2000 incident. During the interview, Watkins provided Inspector Swindall with a written account of the event and stated that the children playing in the yard of 1112 Kerr Avenue may have witnessed the altercation. Inspector Swindall proceeded to interview Shipp, and a nine to eleven-year-old juvenile, Jermaine Alexander ("Alexander"), who lived at 1112 Kerr Avenue. Alexander stated that, on the date in question, he saw a mail carrier jump onto the sidewalk to avoid being struck by a man in a gray van who had cursed at and threatened the mail carrier.

Thereafter, Inspector Swindall prepared an internal report that was placed in a case file. Inspector Swindall advised Watkins of his interviews with Shipp and Alexander. He further advised Watkins that if he wanted to file charges, he would have to contact the MPD directly. In connection with his investigation, Inspector Swindall also spoke with MPD Sergeant Charnes. Sergeant Charnes requested a copy of Inspector Swindall's memorandum of the interview with Shipp, and the same was provided to Sergeant Charnes.

At some point, Watkins identified Shipp as his assailant from a photographic line-up provided by the MPD. On or about March 21, 2000, Watkins swore out a criminal complaint against Shipp with the MPD. Thereafter, Shipp was charged with reckless endangerment under Tennessee law. *See* Tenn. Code Ann. § 39-13-103. After learning that a warrant for his arrest had been issued, Shipp turned himself in to the MPD on March 31, 2000.

A preliminary hearing was held in a Shelby County, Tennessee court. Watkins testified at the hearing, but Inspector Swindall did not. Later, both Inspector Swindall and Watkins were summoned to appear before a Shelby County grand jury to be held August 30, 2001. On that date, a Shelby County district attorney informed Inspector Swindall, for the first time, that the indictment against Shipp was for aggravated assault rather than reckless endangerment. Inspector Swindall was called to testify before the grand jury, but Watkins was not called to testify. Later that day, the grand jury declined to indict Shipp and returned a not true bill. Inspector Swindall closed his case file, and neither he nor Watkins took any further action with regard to the case.

**B. Procedural Background**

Shipp filed an administrative charge with the United States Postal Service on March 17, 2003. The same was denied by the United States Postal Service on September 2, 2003. On February 27, 2004, Shipp filed a malicious prosecution action against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671, *et seq*., in the United States District Court for the Western District of Tennessee. In his complaint, Shipp alleged that Watkins and Inspector Swindall initiated and caused the filing of criminal charges of reckless endangerment and aggravated assault against him without probable cause and with knowledge of the falsity of the charges. On May 16, 2005, the United States filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), or alternatively, for summary judgment pursuant to Fed. R. Civ. P. 56.

On October 3, 2005, the district court granted the United States' motion. The district court dismissed Shipp's claims related to the conduct of Watkins on the grounds that the court lacked subject matter jurisdiction under the FTCA, 28 U.S.C. § 2680(h). In relevant part, the FTCA provides that the United States' waiver of sovereign immunity shall not apply to any claim of malicious prosecution, unless the claim concerns the acts or omissions of federal investigative or law enforcement officers. 28 U.S.C. § 2680(h). The district court concluded that since Watkins was only a mail carrier, and not a federal investigative or law enforcement officer, Shipp's claims related to Watkins' conduct could not lie.

The district court also granted summary judgment dismissing Shipp's malicious prosecution claims concerning Inspector Swindall's conduct. Specifically, the district court found that (1) Shipp could not relitigate the issue of probable cause, because he had failed to establish that the state

criminal proceeding had been brought against him without probable cause, and (2) reasonable minds could not differ that Inspector Swindall had not acted with malice or an improper motive.

On November 30, 2005, Shipp timely appealed the district court's grant of summary judgment dismissing his claims related to the conduct of Inspector Swindall. Shipp does not dispute the district court's finding with respect to Watkins. Accordingly, the scope of the present appeal is limited to the district court's grant of summary judgement dismissing Shipp's malicious prosecution claims arising out of the acts or omissions of Inspector Swindall.

## II. ANALYSIS

We review a district court's grant of summary judgment *de novo*. *Howard ex rel. Estate of Howard v. Bayes*, 457 F.3d 568, 571 (6th Cir. 2006) (citing *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003)). In reviewing a grant of summary judgment, we apply the same legal standard as the district court. *United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 856 (6th Cir. 2005) (citing *Equitable Life Assur. Soc'y of the United States v. Poe*, 143 F.3d 1013, 1015 (6th Cir. 1998)). A motion for summary judgment should be granted only where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue concerning a material fact is genuine if the record as a whole could lead a reasonable trier of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We must review the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In analyzing claims brought pursuant to the FTCA, a court must apply the substantive law of the state in which the incident occurred, here Tennessee. 28 U.S.C. § 1346(b)(1) (Under the FTCA the district courts shall have jurisdiction of certain civil actions against the United States for money damages, injury, or loss of property caused by the negligent or wrongful act or omission of government employees acting within the scope of employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the *law of the place* where the action or omission occurred.") (emphasis added); *see also FDIC v. Meyer*, 510 U.S. 471, 478 (1994).

To prevail on a claim of malicious prosecution under the law of Tennessee, a plaintiff must establish that: (1) the defendant instituted a prior suit or judicial proceeding against the plaintiff without probable cause; (2) the defendant brought such action with malice; and (3) the action was terminated in the plaintiff's favor. *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005) (citing *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992); *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 248 (Tenn. 1992)). In the instant case, our analysis centers on the first and second elements, because it is undisputed that the Shelby County criminal proceedings were terminated in Shipp's favor when the grand jury declined to indict Shipp and returned a not true bill.

Shipp submits on appeal that the district court erred in granting summary judgment dismissing his malicious prosecution action for the following three reasons: (1) the issue of probable cause could be relitigated in the district court; (2) reasonable minds could differ on the issue of whether Inspector Swindall acted with malice; and (3) the district court improperly relied on

Inspector Swindall's deposition testimony about Jermaine Alexander's statements because this testimony was hearsay evidence.

## A. Institution of Criminal Proceedings

As a preliminary matter, the United States argues that the issues of probable cause and malice need not be reached because Inspector Swindall did not directly initiate or prosecute the criminal charges against Shipp. We reject this argument.

While it is not necessary that a defendant swear out a warrant or complaint to be liable for malicious prosecution under Tennessee law, "something more than merely giving information must be shown." *Wykle v. Valley Fidelity Bank & Trust Co.*, 658 S.W.2d 96, 98 (Tenn. Ct. App. 1983). A defendant can be found liable if he or she actively takes "part in instigating or encouraging the prosecution." *Id.* (quoting Prosser on Torts, 836 (4th ed. 1971)). Active participation includes "'advis[ing] or assist[ing] another person to begin the proceeding, ratifi[ng] it when it is begun . . . , or tak[ing] any active part in directing or aiding the conduct of the case.'" *Id.* (quoting Prosser on Torts, *supra* at 836). Additionally, "'[o]ne who causes another's prosecution by false statements or misrepresentations, made to a police officer, with an improper motive, is liable for malicious prosecution, although he does not file a complaint or actually procure the prosecution.'" *Peoples Protective Life Ins. Co. v. Neuhoff*, 407 S.W.2d 190, 200 (Tenn. Ct. App. 1966) (quoting *Cohen v. Ferguson*, 336 S.W.2d 949, 954 (Tenn. Ct. App. 1959)).

In the present case, issues of fact remain as to whether Inspector Swindall advised, assisted, aided, or encouraged Watkins or the MPD to commence or continue the criminal proceedings against

Shipp. For the purposes of summary judgment, we will assume that Inspector Swindall actively took part in instigating or encouraging the prosecution of Shipp.

### B. Probable Cause

On appeal, Shipp contends that the issue of probable cause should have been relitigated at the district court irrespective of the fact that probable cause had been found in a preliminary hearing held in a Shelby County court. The district court, relying on *Franklin v. Messmer*, 111 F.App'x 386, 388 (6th Cir. 2004) and *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998), found that "[w]here a plaintiff alleging malicious prosecution had an opportunity to litigate probable cause by way of a preliminary hearing conducted in the prior proceeding, . . . he may not relitigate the issue of probable cause in a subsequent action." *Shipp v. United States*, No. 04-2144, slip op. at 12 (W.D. Tenn. Oct. 3, 2005). The district court held that Shipp had failed to satisfy the probable cause element of a malicious prosecution claim because a preliminary hearing had been held in state court, Shipp had been bound over to the Shelby County grand jury, and Shipp had not alleged any wrongdoing with respect to the preliminary hearing.

In its discussion of applicable law, the district court overlooked an important exception to the general rule that relitigation of a state court's finding of probable cause is estopped in the federal courts. A finding of probable cause in a preliminary state criminal hearing does not have preclusive effect in a subsequent civil action for malicious prosecution when there is evidence of false statements or misrepresentations by law enforcement officials during the criminal proceeding. *See*

*Hinchman v. Moore*, 312 F.3d 198, 202-03 (6th Cir. 2002); *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001).[2]

In the proceedings below, Shipp argued that Inspector Swindall knew the charges were false, but proceeded to initiate a prosecution against him. Thus, on summary judgment, the district court would have been better advised to address the law enforcement false statement or misrepresentation exception. *See Darrah*, 255 F.3d at 311. However, the district court's failure to take into account this exception is inconsequential for two reasons. First, there is no evidence that Inspector Swindall made any false statement or misrepresentation. Even assuming that Watkins' account of the March 11, 2000 incident was wholly fabricated, there is no indication in the record that Inspector Swindall knew, suspected, or should have known or suspected that Watkins' allegations were false.

Second, no reasonable fact-finder could conclude that Inspector Swindall instituted or encouraged the criminal proceedings against Shipp without probable cause. Under Tennessee law of malicious prosecution, "probable cause requires only the existence of such facts and circumstances sufficient to excite in a reasonable mind the belief that the accused is guilty of the crime charged. . . . Probable cause is to be determined solely from an objective examination of the surrounding facts and circumstances." *Roberts*, 842 S.W.2d at 248.

Here, Inspector Swindall received a report from a post office branch supervisor, Greer, that one of his subordinates had reported an assault from the scene of the event. Inspector Swindall then

---

[2] The fact that the Court applied Michigan law of collateral estoppel in *Hinchman* and *Darrah* does not alter our analysis because under both Michigan and Tennessee law "identity of issues" is a prerequisite for defensive issue preclusion. *See Beaty v. McGraw*, 15 S.W.3d 819, 824, 827 (Tenn. Ct. App. 1998); *Hinchman*, 312 F.3d at 202 (citing *Darrah*, 255 F.3d at 311) (citing *People v. Gates*, 452 N.W.2d 627, 630-31 (Mich. 1990)).

interviewed the alleged victim, Watkins, and alleged perpetrator, Shipp. Although Shipp denied attempting to run over Watkins with his gray van, he admitted that he had driven such a van to the area near Kerr and Woodward Avenues on March 11, 2000 and approached Watkins to inquire about the non-delivery of his mail. Both Watkins and Shipp mentioned that persons at 1112 Kerr Avenue may have witnessed the incident. Inspector Swindall went to 1112 Kerr Avenue and interviewed Alexander, who corroborated Watkins' account of the events. Under an objective examination, it is clear that there were "such facts and circumstances sufficient to excite in a reasonable mind the belief" that Shipp was guilty of reckless endangerment or aggravated assault. *See id.* Based upon the above undisputed facts, a reasonable jury could only conclude that Inspector Swindall had probable cause to conduct an investigation, to advise Watkins to contact the MPD if he wanted to press charges, to share his findings with MPD Sergeant Charnes, and to otherwise initiate or encourage criminal proceedings against Shipp for the charge of reckless endangerment or aggravated assault.

### C. Malice

Shipp further argues that the district court erred in finding that "reasonable minds could not differ with respect to the existence of malice, as no improper motive on Inspector Swindall's part has been shown." *Shipp*, No. 04-2144, slip op. at 18. Under Tennessee law, "malice concerns the subjective mental state of the [defendant]." *Roberts*, 842 S.W.2d at 248. "The definition of malice for purposes of a malicious prosecution lawsuit is not the same as it is in a defamation case. Any improper motive is sufficient to constitute malice when malicious prosecution is charged. Ill will

or personal hatred need not be shown, though these would certainly be sufficient to establish malice." *Kelley v. Tomlinson*, 46 S.W.3d 742, 746 (Tenn. Ct. App. 2000) (citing *Lawson v. Wilkinson*, 447 S.W.2d 369, 413-14 (Tenn. Ct. App. 1969)) (internal citation omitted); *see also Wright Med. Tech., Inc. v. Grisoni*, 135 S.W.3d 561, 582 (Tenn. Ct. App. 2001).

In support of his argument that factual issues remain as to whether Inspector Swindall acted with malice, Shipp raises five points, all of which are unpersuasive. First, Shipp alleges that Inspector Swindall did not conduct a complete investigation of the alleged assault. More specifically, Shipp contends that Inspector Swindall should have interviewed other persons residing at 1112 Kerr Avenue. The record provides that both Watkins and Shipp either suggested or requested that Inspector Swindall interview witnesses from 1112 Kerr Avenue who may have observed the March 11, 2000 incident. Accordingly, Inspector Swindall went to 1112 Kerr Avenue and interviewed Alexander, who claimed to have witnessed the event. Alexander's statements squarely corroborated Watkins' allegations. Inspector Swindall also made inquires with another juvenile, but that child claimed he had not been present at the time of the incident.

There is no intimation in the record, and none can be inferred, that Inspector Swindall knew or suspected that there were other persons residing at 1112 Kerr Avenue who possessed information that would contradict Watkins' or Alexander's report of the March 11, 2000 incident. In fact, there is no reason to believe that any such witness existed. There is no evidence that Inspector Swindall's investigation or the investigation of the Memphis Police Department revealed any additional witnesses from 1112 Kerr Avenue. In his appellate brief and at oral argument, Shipp's counsel was unable to supply the names or a description of these amorphous "other persons" or provide any

suggestion of what may have been revealed by an interview of these individuals. Therefore, it appears that the manner in which Inspector Swindall executed his investigation was diligent, reasonable, and not prompted by malice or any improper motive.

Second, Shipp argues that Inspector Swindall had no basis for instituting a criminal proceeding against him for the more serious charge of aggravated assault when he had originally been charged with only reckless endangerment. This argument fails because the record shows that Inspector Swindall took no part in having the charge against Shipp changed from reckless endangerment to aggravated assault. In fact, it appears that Inspector Swindall did not know that the original charge had been altered until he appeared for the August 30, 2001 Shelby County grand jury session. Moreover, even assuming, *arguendo*, that Inspector Swindall had played a role in prompting the Tennessee authorities to modify the charge, it is clear that there was probable cause to institute a prosecution for aggravated assault since both Watkins and Alexander had reported that when Shipp tried to run down Watkins with his van, Shipp yelled that he was "going to kill" Watkins. *See* Tenn. Code Ann. §§ 39-13-101, 39-13-102.

Third, Shipp points to the fact that Inspector Swindall was listed as the prosecutor on Shipp's indictment form. The not true bill returned by the Shelby County grand jury on August 30, 2001, lists Inspector Swindall as both a witness and the prosecutor. It appears from the record that the inclusion of Inspector Swindall's name on the form was simply a clerical error. The record is devoid of any evidence that Inspector Swindall, a United States postal inspector and summoned witness, simultaneously served as a Tennessee Shelby County prosecutor in the state criminal proceedings against Shipp. The fact that Inspector Swindall's name was mistakenly listed as prosecutor on

the not true bill returned by the Shelby County grand jury is immaterial and does not indicate malice or an improper motive.

Fourth, Shipp notes that Inspector Swindall has provided no explanation as to why he testified before the Shelby County grand jury and the alleged victim, Watkins, did not testify. Both Inspector Swindall and Watkins were summoned to the Shelby County grand jury proceedings held August 30, 2001, but only Inspector Swindall was called to testify. It is incontrovertible that Inspector Swindall had no power over who was called to testify before the grand jury. Thus, this fact has no bearing on the issue of malice.

Finally, Shipp argues that malice should be inferred on the basis that Inspector Swindall instituted criminal proceedings against him without probable cause. As we have already found that Inspector Swindall acted upon probable cause, this argument must also fail.

Shipp has not presented any cognizable argument, much less any evidence, to support his contention that Inspector Swindall acted with malice, or that factual questions remain as to this issue. The record is devoid of any indicia of malice or impermissible intent on the part of Inspector Swindall. No reasonable fact-finder could conclude that Inspector Swindall acted with malice or with any improper motive. Accordingly, the district court's grant of summary judgment was appropriate.

### D. Hearsay

Shipp's final ground for appeal is that the district court erred when it relied on Inspector Swindall's account of Alexander's statements (that he had witnessed a mail carrier jump onto the

sidewalk to avoid being hit by a man in a gray van who yelled threats and vulgarisms) because the testimony amounted to inadmissible hearsay. "'[I]t is well settled that only admissible evidence may be considered by a trial court in ruling on a motion for summary judgment.'" *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)); *see also Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969) (stating that hearsay evidence cannot be considered on a motion for summary judgment). Here, Inspector Swindall's deposition testimony concerning Alexander's statements was not hearsay evidence because it was not offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Rather, the statements were offered to demonstrate that Inspector Swindall's investigation of Watkins' complaint had been undertaken upon probable cause and without malice. Therefore, we find no error in the district court's consideration of this evidence.

### III. CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's grant of summary judgment in favor of the United States.