IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 27, 2015 Session

**RANDALL THOMPSON v. HERBERT HAMM**

**Appeal from the Circuit Court for Shelby County**
**No. CT00470610      D'Army Bailey, Judge**

_____

**No. W2015-00004-COA-R3-CV – Filed November 17, 2015**
_____

Plaintiff brought a malicious prosecution action against defendant. Defendant moved for summary judgment, which the trial court granted. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, J., and BRANDON O. GIBSON, J., joined.

T. Edgar Davison, Memphis, Tennessee, for the appellant, Randall Thompson.

John Michael Ryall and Deborah Godwin, Memphis, Tennessee, for the appellee, Herbert Hamm.

**OPINION**

**Background**

Plaintiff-Appellant Randall Thompson ("Appellant") was the Maintenance Manager at the City of Memphis South Water Treatment Plant ("the plant") for over four years. During his tenure as Maintenance Manager, the City allegedly received numerous complaints against Appellant concerning racial discrimination against African Americans. In May 2008, Defendant-Appellee Herbert Hamm ("Appellee") provided the City of Memphis ("City") with an affidavit describing certain instances of discrimination by Appellant in the hiring process at the plant. The allegations against Appellant prompted the City to hire legal counsel to conduct an independent fact-finding investigation into the allegations involving racial

discrimination in the hiring process.[1] Attorneys from the law firm of Glankler Brown, PLLC, ("Glankler Brown") conducted several interviews with the plant's employees, including Appellee. Throughout the investigation and subsequent proceedings, Appellant has adamantly denied the allegations that he had engaged in discriminatory practices.

As a result of the investigation by Glankler Brown, the City found that it had sufficient evidence to charge Appellant with various violations of City policies and work rules. The City held pre-disciplinary hearings for Appellant on September 10, 2008 and September 14, 2008. Appellant was presented with the affidavit of Appellee at this time and denied the allegations. After the hearing, the City ultimately determined that sufficient evidence existed to sustain the charges against Appellant. As a result, Appellant was terminated on September 18, 2008, from his position with the plant as Maintenance Manager.

Appellant thereafter appealed his termination to the City's Civil Service Commission ("Commission"). The Commission conducted two evidentiary hearings during November and December 2008. During these hearings, testimony was heard from Appellant, Appellee, and multiple co-workers. The co-worker witnesses allegedly denied that Appellant had acted discriminatorily against anyone.[2] Testimony also showed that tension existed between Appellant and Appellee. Appellee, however, affirmed the allegations contained in his affidavit.

On January 9, 2009, the Commission issued a decision to set aside the termination, finding that there was insufficient evidence to sustain the charges against Appellant. The City appealed the decision to set aside the termination to the Shelby County Chancery Court. By written order entered September 2, 2009, the chancery court affirmed the Commission's decision to set aside the termination. The chancery court's order provides:

> [T]he Commission did not abuse its discretion or act arbitrarily or capriciously in finding Mr. Thompson to be more credible than Mr. Hamm. The record[3] clearly points to the fact that all witnesses other than Herbert Hamm (Mr. Thompson's accuser) had never heard Mr. Thompson make racially derogative remarks. The record reflects that Mr. Thompson played a part in

---

[1] The specific date that the law firm was retained to perform the investigation is unclear from the record on appeal.

[2] Appellant asserts that the co-workers testified that Appellant had not discriminated against African Americans previously. Appellee does not appear to dispute this fact. However, the record on appeal does not include the full transcript of the hearings.

[3] The full record from the administrative proceedings is not included in the record on appeal to this Court.

> establishing a committee to help with racial tensions in the Plant and that Mr. Thompson also hired African American employees. . . . The record reflects that Mr. Hamm had issues with Mr. Thompson. Mr. Hamm did not get the promotion he wanted. . . . The Court finds that the findings of the [Commission] are supported by the weight of the evidence contained in the record.

In affirming the Commission's decision, the chancery court also concluded that Appellant should be immediately reinstated. Appellant was awarded back pay with interest.

On September 17, 2009, Appellant filed an action against Appellee in the Shelby County General Sessions Court. On the civil warrant, he asserted claims of defamation and slander. The case was continued on several occasions, and eventually, on September 9, 2010, the general sessions judge entered judgment. Although the judgment section of the civil warrant is illegible, neither party disputes that judgment was entered in favor of Appellee. On September 16, 2010, Appellant filed a notice of appeal to the Circuit Court. He did not file a complaint in the Circuit Court at this time.

Appellee moved to dismiss Appellant's appeal on October 22, 2010 on two separate bases: (1) that the affidavit filed by Appellee could not form the basis of a defamation claim, and (2) that the statute of limitations had expired by the time Appellant filed the civil warrant. Appellant responded to the motion to dismiss on December 9, 2010. The crux of his response was a request to amend his complaint to "clarify the allegations" against Appellee. On January 4, 2011, without a ruling from the trial court on his request, Appellant filed a complaint in the Circuit Court.[4] In this complaint, Appellant asserted, for the first time, a cause of action for malicious prosecution. The complaint omitted the claims for defamation and slander, as had been alleged in the civil warrant filed in General Sessions Court.

Appellee moved to dismiss the newly-filed complaint on May 4, 2011, pursuant to Rule 12.06 of the Tennessee Rules of Civil Procedure. Appellee argued that Appellant failed to state a malicious prosecution claim because Appellee did not institute the administrative proceedings against Appellant. The trial court denied this motion via written order entered December 11, 2012. The trial court also issued a decision letter dated February 18, 2014.[5] On

---

[4]Although Appellant requested leave of court to file his complaint, permission from the court was not necessary because Appellee had not yet filed a responsive pleading. *See* Tenn. R. Civ. P. 15.01 ("A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served . . . ."). Appellee's motion to dismiss is not a "responsive pleading." **Adams v. Carter Cnty. Mem'l Hosp.**, 548 S.W.2d 307, 309 (Tenn. 1977).

[5] It is unclear the reason for the substantial delay. The trial court's decision letter, unlike its order, contains its reasoning for denying the motion to dismiss. The trial court found that "how deeply Defendant Hamm participated in the administrative case against Plaintiff . . . is an issue of fact to be tried by the [j]ury."

August 29, 2014, Appellee answered the complaint and generally denied the material allegations.

On October 28, 2014, Appellee filed a motion for summary judgment asserting that Appellant could not establish a claim for malicious prosecution for several reasons. First, Appellee argued that neither a lawsuit nor judicial proceeding was ever brought against Appellant as is required to state a claim for malicious prosecution. Appellee also argued that, even assuming a lawsuit or judicial proceeding had occurred, he was not the party who initiated it. He also argued that probable cause existed to institute disciplinary proceedings against Appellant because the City sustained the violations after an investigation. Finally, Appellee again argued that the statute of limitations had expired. Appellee also attached the affidavit of Chandell Ryan Carr in support of his motion. Ms. Carr served as the EEO/Labor Relations Manager for the City's Division of Human Resources. She stated that the City had received numerous complaints against Appellant alleging discriminatory practices in his job selection process. She further asserted that the City indeed hired outside legal counsel to investigate these claims and that the City ultimately decided to pursue disciplinary action against Appellant. She stated that the conclusion was based on evidence from multiple sources, including Appellee's affidavit. Further, she stated that "[t]he City's determination that [Appellant] should face disciplinary action was made by management personnel of the [City] and was based on the totality of the evidence."

The trial court granted Appellee's motion for summary judgment on December 3, 2014, finding that Appellee's involvement in the proceedings against Appellant was insufficient to support a claim of malicious prosecution. It concluded that the City, if anyone, was responsible for initiating the proceedings, and Appellant's involvement was limited to providing information to the City. Accordingly, the trial court concluded that Appellee was entitled to judgment as a matter of law. Appellant appealed.

## Issue

Appellant presents one issue for review: Whether the trial court erred by ruling that Appellee was entitled to summary judgment on Appellant's claim of malicious prosecution because Appellant could not state a cause of action.

In addition, Appellee presents one issue for review: Whether Appellant's claim is barred by the applicable statute of limitations.

## Standard of Review

Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P.

4

56.04. In cases where the moving party does not bear the burden of proof at trial, the movant may obtain summary judgment if it:

> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101 (applying to cases filed after July 1, 2011); *see also* ***Rye v. Women's Care Ctr. of Memphis, MPLLC***, --- S.W.3d ---, 2015 WL 6457768, at *22 (Tenn. Oct. 26, 2015) (judicially adopting a summary judgment parallel to the statutory version contained in Tenn. Code Ann. § 20-16-101). When the moving party has made a properly supported motion, the "burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5; *see* ***Robinson v. Omer***, 952 S.W.2d 423, 426 (Tenn. 1997); ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993). The nonmoving party may not simply rest upon the pleadings but must offer proof by affidavits or other discovery materials to show that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06. If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered." Tenn. R. Civ. P. 56.06.

On appeal, this Court reviews a trial court's grant of summary judgment *de novo* with no presumption of correctness. *See* ***City of Tullahoma v. Bedford Cnty.***, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. ***Luther v. Compton***, 5 S.W.3d 635, 639 (Tenn. 1999); ***Muhlheim v. Knox. Cnty. Bd. of Educ.***, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See* ***White v. Lawrence***, 975 S.W.2d 525, 529 (Tenn. 1998); ***McCall v. Wilder***, 913 S.W.2d 150, 153 (Tenn. 1995).

## Discussion

This appeal requires this Court to examine whether any genuine disputes of material fact exist, and if they do not, whether the undisputed facts demonstrate that Appellant can proceed with his claim for malicious prosecution. According to the Tennessee Supreme Court, to establish a claim for malicious prosecution, a plaintiff must prove the following essential elements: "(1) a prior suit or judicial proceeding was instituted without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated in plaintiff's favor." ***Roberts v. Fed. Express Corp.***, 842 S.W.2d 246, 247–

48 (Tenn. 1992) (citing *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992); *Lewis v. Allen*, 698 S.W.2d 58, 59 (Tenn. 1985)).[6]

Appellant asserts that the trial court erred when it granted summary judgment in favor of Appellee for several reasons. First, Appellant claims that the termination proceeding constituted a proceeding sufficient to sustain a claim for malicious prosecution. In his brief, he relies heavily on his assumption that, "[a]s a result of the Affidavit submitted by [Appellee], [Appellant] was investigated and terminated." Further, he asserts that the termination proceeding was brought with malice and without probable cause. Finally, he notes that the proceedings were terminated in his favor when the chancery court overturned the Commission's decision and reinstated his employment.

The trial court, as stated above, disagreed with Appellant's contentions. The trial court ultimately concluded that Appellee was entitled to judgment as a matter of law on Appellant's claim for malicious prosecution:

> . . . because the undisputed facts do not establish that Defendant Hamm initiated any type of lawsuit or judicial proceeding against Plaintiff. The facts demonstrate that Plaintiff's claims arise from an internal termination decision made by the City of Memphis. Defendant Hamm's only involvement in the City's internal investigation was providing the City information regarding Plaintiff's conduct. Such action on the part of Defendant Hamm does not constitute the initiation of a lawsuit or judicial proceeding against Plaintiff as is required to succeed on a claim for malicious prosecution. Furthermore, the Civil Service proceedings involved in Plaintiff's case were initiated by Plaintiff, not Defendant Hamm.

Accordingly, the trial court granted the motion for summary judgment in favor of Appellee and dismissed Appellant's cause of action.

Appellee asserts that Appellant cannot establish a claim for malicious prosecution because the proceedings that resulted in Appellant's termination do not constitute judicial or quasi-judicial proceedings of a kind to support a claim for malicious prosecution; that Appellee did not institute the proceedings against Appellant; that there was sufficient probable cause to support the allegations; and that Appellee did not act with malice. We begin with Appellee's argument that his provision of information to the City is insufficient to

---

[6] While claims of malicious prosecution were historically limited to the institution of criminal proceedings, it is now generally recognized that the malicious institution of civil proceedings may be the basis for a claim. *Kauffman v. A.H. Robins Co.*, 448 S.W.2d 400 (Tenn. 1969).

6

establish that Appellee instituted a wrongful prosecution, as our resolution of this issue is dispositive of this appeal. Generally,

> One who causes a third person to institute a wrongful prosecution may be held liable in damages to the party injured to the same extent as if he or she had directly instituted the proceedings. Thus, a person is liable for malicious prosecution even though he or she did not personally sign the complaint that initiates the proceeding or did not file a direct charge.
>
> However, to render one liable for a malicious prosecution begun by another, it must appear that he or she was the proximate and efficient cause of putting the law in motion; some affirmative act in connection with the prosecution must be shown. A private person can be said to have initiated a criminal proceeding, thus satisfying that element of a malicious prosecution claim, if he or she has insisted that the plaintiff should be prosecuted, that is, if he or she has brought pressure of any kind to bear upon the public officer's decision to commence the prosecution.

52 Am. Jur. 2d Malicious Prosecution § 25 (footnotes omitted); *see also* 52 Am. Jur. 2d Malicious Prosecution § 9 (noting that principles surrounding the tort of malicious prosecution generally apply equally to claims based on civil and criminal proceedings). However, this Court has held "that before one can be liable for malicious prosecution, he must do something more than merely give information." *Wykle v. Valley Fidelity Bank & Trust Co.*, 658 S.W.2d 96, 99 (Tenn. Ct. App. 1983), *perm. app. denied* (Tenn. Aug. 1, 1983). Further, the "giving of information or the making of the accusation . . . does not constitute a procurement of the proceedings which the third person initiates thereon if it is left to the uncontrolled choice of the third person to bring the proceedings or not as he may see fit." *Cohen v. Ferguson*, 336 S.W.2d 949, 954 (Tenn. Ct. App. 1959) (citing *Restatement (First) of Torts* § 653, cmt. b (1938)). The person sought to be found liable must "take[] some active part in instigating or encouraging the prosecution." *Wykle*, 658 S.W.2d at 98 (quoting *Prosser on Torts* 836 (4th ed.)).

Appellee argues that the Tennessee case of *Wykle v. Valley Fidelity Bank & Trust Co.* is analogous to the case-at-bar and that it demonstrates that his involvement is insufficient to sustain Appellant's malicious prosecution claim. In *Wykle*, Ivey Whittaker purchased an Oldsmobile Cutlass from a dealership under a conditional sales contract. *Wykle*, 658 S.W.2d at 97. The contract was assigned to a bank, which acquired a lien on the vehicle. The lien, however, was never noted on the title. Mr. Whittaker eventually traded the Oldsmobile to plaintiff, who eventually sold it to a bona fide purchaser. Several months later,

7

a representative of the dealership, Lester Fox, contacted plaintiff concerning the indebtedness owed on the Oldsmobile, and plaintiff contacted Mr. Whittaker. Mr. Whittaker assured plaintiff that it was an unsecured personal debt. Eventually, Lester Fox's son, an attorney, told one of the bank's vice presidents that plaintiff was aware of the indebtedness on the Oldsmobile when he sold it. After an investigation by the bank's attorney, a warrant was issued for plaintiff for violation of Tennessee Code Annotated Section 39-3-927, which concerns the disposal of encumbered property. Although Mr. Fox testified at plaintiff's preliminary hearing, the criminal case against plaintiff was ultimately dismissed for lack of probable cause and, although presented to the Grand Jury, no indictment was returned.

The plaintiff subsequently brought a malicious prosecution action against the bank, one of its vice presidents, and Mr. Fox. *Id.* at 96. The trial court dismissed the case upon the defendants' motion for summary judgment. On appeal, we stated that we were "[mindful] that Mr. Fox's [dealership] assigned the contract with recourse and that he obviously had an interest in collecting the note," but he is not liable "'merely because of his approval . . ., nor for appearing as a witness against the accused, even [if] his testimony is perjured . . . .'" *Id.* at 98 (quoting *Prosser on Torts* 836 (4th ed.)). In affirming the grant of summary judgment in favor of Mr. Fox, we concluded that he merely provided information, which was insufficient to support a malicious prosecution claim. *Id.* at 99.[7]

In this case, as stated above, both parties agree that Appellee provided an affidavit to the City alleging Appellant had a history of discriminating against African Americans. However, the parties do not agree on whether Appellee's affidavit and provision of information during the investigation of Appellant are sufficient to provide the legal basis for the institution of proceedings against Appellant. Our review of the Appellee's statement of undisputed facts and Appellant's responses thereto demonstrates that Appellee's involvement was indeed limited to providing information. Subsequently, the City made the independent decision to hire Glankler Brown to investigate the claims in the affidavit and interview Appellant's coworkers.

Even after reviewing the facts in the light most favorable to Appellant—and despite Appellant's attempts to overstate the involvement of Appellee[8]—the record supports the

_____

[7] For reasons not relevant to this appeal, we reversed and remanded the grant of summary judgment in favor of the remaining defendants.

[8] For example, in Appellant's response to Appellee's statement of undisputed facts, he states:

> [Undisputed Fact of Appellee No. 11:] Defendant Hamm's only involvement in the investigative process was providing information to the City.
> RESPONSE: Disputed; Hamm provided a false, malicious affidavit

8

conclusion that Appellee merely provided information and the City independently decided whether to pursue further action against Appellant. The record is devoid of any allegations that Appellee urged or encouraged the City to investigate Appellant. As evidenced by the investigation and multiple hearings, the City, and not Appellee, had control over the decision of whether to pursue or abandon the charges against Appellant. *See Pera v. Kroger Co.*, 674 S.W.2d 715, 723–24 (Tenn. 1984) ("In order for liability to be imposed under this principle, however, the prosecuting witness must have some control over the prosecution. It appears to be well settled that where the instigator has no control over the case once prosecution has begun, his participation will not subject him to liability.") As stated in *Pera*, "[c]ases in which liability has been imposed . . . usually involve conduct such as urging a prosecutor to proceed against his own advice or judgment . . . ." *Id.* at 723. That is simply not the case here. Although the record is clear that Appellee made allegations against Appellant and provided the City with information, the record is devoid of any other action taken by Appellee that could be interpreted as "urging" or "encouraging" the proceedings against Appellant. *Id.* at 723, 724. As evidenced by the affidavit provided by Ms. Carr, the City conducted its own investigation and made the decision as to whether to proceed against Appellant. To this end, Appellant does not dispute that the City ultimately controlled the choice of whether to institute proceedings against Appellant. *See Smith v. Kwik Fuel Ctr.*, No. E2005-00741-COA-R3CV, 2006 WL 770469, at *6 (Tenn. Ct. App. Mar. 27, 2006) (considering whether the defendant "exerted control over the decision to prosecute"). Accordingly, we must conclude that Appellee's mere provision of information to the City, without more, is insufficient to render him liable for malicious prosecution against Appellant.[9]

---

> intended to get both [Appellant's co-worker] and [Appellant] terminated. Testimony in the Civil Service hearing [showed] that Hamm desired [Appellant's co-worker's] job and there was animosity towards him and [Appellant].

While we acknowledge that Appellant's assertions of malice are prevalent in the record, they are simply insufficient to refute the fact that Appellee indeed did only provide information.

[9] In addition, although Appellant denies the allegations contained in the affidavit, his denial is immaterial. The law is clear that the provision of information is insufficient to support a claim for malicious prosecution, whether the information is truthful or false. *Ryerson v. Amer. Sur. Co. of NY*, 373 S.W.2d 436, 438 (Tenn. 1963) ("The plaintiff on the trial may deem it necessary to prove that certain statements made in the first trial were false in order to help make out an element of his action, e.g., malice or lack of probable cause; but the false statements would only be evidence of the element sought to be shown. They would not be the gravamen of the action."); *Millsaps v. Millsaps*, No. 159, 1989 WL 44840, at *2 (Tenn. Ct. App. May 3, 1989) ("Averring that allegations in the initial complaint are false and without basis in fact is merely an attempt to show lack of probable cause.").

Still, Appellant asserts that Appellee can be held liable because the "Affidavit submitted by Hamm was the key factor in Thompson's termination and the City's decision." Respectfully, we similarly find this argument unpersuasive. In *Hatfield v. Cleveland Bank & Trust Co.*, plaintiff sued the defendant for malicious prosecution claiming that the defendant had sought a warrant from a police officer and urged the prosecution to commence. No. 03A01-9506-CV-00209, 1995 WL 621003, at *3 (Tenn. Ct. App. Oct. 24, 1995). The police officer swore out the warrant without "any independent investigation of the facts related to him by [the defendant]." *Id. at* *2. On appeal, we concluded that the trial court erred when it granted defendant's motion for a directed verdict at trial because one could conclude that the defendant likely knew, based on her prior dealings with that police officer, that he would likely swear out the warrant without further investigation. *Id.* at 3.

On the contrary, in the case-at-bar, the City conducted an independent investigation before pursuing further action against Appellant. The investigation by Glanker Brown ultimately prompted disciplinary action against Appellant, and the City held a civil service hearing wherein, we presume from the information in the record, that several witnesses testified, including Appellee, Appellant, and multiple co-workers. Although the City only found Appellee to be credible and discredited the other three witnesses, it cannot be overemphasized that the record supports the conclusion that the City, not Appellee, ultimately made the decision to pursue discipline against Appellant, even if the information provided by Appellee was a "key factor," as contended by Appellant. Accordingly, we must conclude that the undisputed facts do not support Appellant's claim for malicious prosecution.

Appellant, however, contends that the situation in this case is highly analogous to the Tennessee Supreme Court's decision in *Kaufmann v. A.H. Robins Co.*, 448 S.W.2d 400 (Tenn. 1969). Respectfully, we disagree. In *Kaufmann*, the defendant previously filed a complaint against plaintiff with the State of Tennessee Board of Pharmacy, charging "plaintiff with substituting a medical preparation for defendant's product . . . ." *Kaufmann*, 448 S.W.2d at 401. Ultimately, the trial court dismissed the lawsuit, and on appeal, the Supreme Court held that plaintiff did state a cause of action against the defendant. However, *Kaufmann* is readily distinguishable from the instant case for several reasons. To begin, the primary focus of the Supreme Court's decision in *Kaufmann* was whether the proceeding before the State of Tennessee Board of Pharmacy constituted a judicial or quasi-judicial proceeding sufficient to satisfy that element of a malicious prosecution claim, rather than the question of whether Appellee actually instituted the proceedings against Appellant. Further, regarding the facts of *Kaufmann*, the defendant in that case filed "a formal complaint with the Board in which it stated that it stood ready to attempt to prove the alleged violation of the pharmacy laws." *Id.* at 404–05. Thus, it appears that the defendant in *Kaufmann* assumed a prosecutorial role, whereas Appellee in this case simply provided information to the City,

assuming a role more akin to a witness. Last, our research reveals that ***Kaufmann*** has never been cited by any Tennessee court for the proposition that either testifying or providing information to authorities who then conduct an independent investigation to confirm the allegations is alone sufficient to support a malicious prosecution claim. Thus, Appellant's attempt to argue that ***Kaufmann*** should dictate our analysis of this case is, respectfully, unavailing.

Finally, we are cognizant that the Supreme Court has also opined on certain policy considerations surrounding malicious prosecution claims: "Malicious prosecution claims have the potential to create a chilling effect on the right to access the courts. The threat of a malicious prosecution action may reduce the public's willingness to resort to the court system for settlement of disputes." ***Himmelfarb v. Allain***, 380 S.W.3d 35, 41 (Tenn. 2012). We decline to extend the bounds of a malicious prosecution claim such that would potentially deter employees from making reports similar to Appellee's because they are fearful of a retributory malicious prosecution action.

We accordingly affirm the trial court's decision to grant summary judgment in favor of Appellee. Based on this conclusion, all other issues are pretermitted.

## Conclusion

The judgment of the Shelby County Circuit Court is affirmed, and this cause is remanded for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant Randall Thompson and his surety.

_____
J. STEVEN STAFFORD, JUDGE

11