# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 18, 2016 Session

## RONNIE GORDON v. TRACTOR SUPPLY COMPANY

### Appeal from the Circuit Court for Williamson County
### No. 2010-246     Joseph A. Woodruff, Judge

_____

### No. M2015-01049-COA-R3-CV – Filed June 8, 2016

_____

Plaintiff appeals the summary dismissal of his claims for malicious prosecution, false imprisonment, and negligent supervision. Plaintiff was arrested and subsequently indicted for two criminal offenses based on statements given to police by two of Defendant's employees at the Tractor Supply Company store in Lenoir City, Tennessee. When the criminal case went to trial, one of the charges was dismissed on the day of trial, and the jury found the defendant not guilty of the other charge. Thereafter, Plaintiff commenced this action asserting several claims. Following discovery, Defendant filed a motion to summarily dismiss all claims. The trial court granted the motion as to three of the claims: malicious prosecution, false imprisonment, and negligent supervision. The plaintiff appealed. We affirm the dismissal of the false imprisonment claim. As for the claims for malicious prosecution and negligent supervision, we have determined that material facts are disputed. Therefore, we reverse the dismissal of the claims for malicious prosecution and negligent supervision and remand for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Remanded

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Cyrus L. Booker, Brentwood, Tennessee, and Quenton I. White, Nashville, Tennessee for the appellant, Ronnie Gordon.[1]

_____

[1] By order of the Supreme Court entered on February 9, 2016, Quenton I. White was suspended from the practice of law. The brief of appellant was submitted prior to his suspension but oral argument occurred after his suspension. Cyrus L. Booker represented the appellant at oral argument.

Mark A. Baugh, Caldwell G. Collins, and Michael T. Schmitt, Nashville, Tennessee, for the appellee, Tractor Supply Company.

## OPINION

On May 14, 2009, two men purchased almost $9,000 of merchandise from a Tractor Supply Company ("Defendant") store in Lenoir City, Tennessee by passing a forged check. The next day, Jim Sewell, the District Manager, and other employees who were present were informed that the check had been dishonored by the bank because the name on the check and the account number for the bank did not match.

Later that day, May 15, 2009, Ronnie Gordon ("Plaintiff") entered the Lenoir City store. Shortly after he entered the store, an employee identified Plaintiff as one of the men involved in the theft the day before. Mr. Sewell was immediately informed about the identification, and he instructed an employee to call the police while he went to confront Plaintiff. Plaintiff testified that he began to leave the store when he heard Mr. Sewell yelling at him. According to Plaintiff, Mr. Sewell "began to push [him] back into the store" as he was trying to leave, and that Mr. Sewell "turned his back to the door facing [Plaintiff] and tried to prevent [Plaintiff] from exiting the store." Plaintiff stated that he was able to leave the store and walk to his truck but Mr. Sewell followed him, pushed him from behind, and pulled on Plaintiff's left arm as he was trying to get in his truck. Although Mr. Sewell and another manager were pulling on the driver's and passenger's door, Plaintiff was able to drive away.

Shortly after Plaintiff left the premises, the Lenoir City police arrived at Defendant's store and interviewed Defendant's employees, including Mr. Sewell and Lisa Scharff. Mr. Sewell told the police that Plaintiff threatened him with a box cutter. Ms. Scharff told the police that Plaintiff was one of the men from the May 14 incident and that Plaintiff threatened Mr. Sewell with a box cutter. Later that day, the Tennessee Highway Patrol arrested Plaintiff.

The grand jury indicted Plaintiff for facilitation of a felony related to the forgery and theft that occurred on May 14 and for aggravated assault against Mr. Sewell "by use or display of a deadly weapon, to-wit: a box cutter . . ." on May 15. When the case went to trial, the district attorney dismissed the facilitation charge. At the conclusion of the trial, the jury acquitted Plaintiff of the assault charge.

Plaintiff filed this action in May 2010 alleging multiple causes of action, and he amended his complaint twice. The most recent complaint alleged assault and battery, false imprisonment, malicious prosecution, and negligent supervision. Defendant answered the complaint and amended complaints, and both parties engaged in discovery.

Defendant filed a motion seeking summary judgment on all claims. The trial court denied the motion as to Plaintiff's claim of assault and battery but granted the motion as to the claims of malicious prosecution, false imprisonment, and negligent supervision. The trial court also ruled that Defendant's employees, including Mr. Sewell, were acting within the course and scope of their employment "when they tried to prevent [Plaintiff] from leaving, called the police, and made statements identifying [Plaintiff] as the second man [involved in the May 14, 2009 incident]." The summary judgment order states that "[t]his Court's disposition of this case would be the same under either the statutory standard [Tenn. Code Ann. § 20-16-101] or the standard articulated in *Hannan* [*v. Altell Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008)]."

The trial court's dismissal of Plaintiff's negligent supervision claim was based on its ruling that Defendant was vicariously liable for its employees' actions and its decisions about Plaintiff's claims for assault and battery, malicious prosecution, and false imprisonment. The court's summary judgment order states:

> The Court has previously determined that [Plaintiff's] assault and battery claim survives [Defendant's] summary judgment motion. In doing so, the Court concludes that Mr. Sewell was acting as [Defendant's] agent for purposes of vicarious liability. The Court has also determined that [Defendant] is entitled to a judgment as a matter of law on [Plaintiff's] false imprisonment and malicious prosecution claims. To the extent that [Plaintiff's] negligent supervision claim embraces those three torts, the Court has already addressed it.

Plaintiff filed a motion asking the trial court to alter its summary judgment order or, in the alternative, to certify it as a final judgment under Tenn. R. Civ. P. 54.02. After a hearing, the trial court denied Plaintiff's motion to amend but clarified its ruling on negligent supervision, stating:

> The Court considers [Defendant's] vicarious liability for the actions of its employees on the store premises on May 15, 2009 to be a matter that appears without substantial controversy, within the meaning of [Tenn. R. Civ. P. 56.05]. To the extent that the Summary Judgment Order does not make the Court's position clear, with this order the Court reiterates its position on the question of [Defendant's] vicarious liability. Accordingly, the Court does not believe it is procedurally necessary for [Plaintiff] to prosecute further his claim of negligent supervision, and the Court would favorably consider instructing the jury that [Defendant] was vicariously liable for the actions of its employees if the jury were to find those employees liable for assault and battery.

The court granted Plaintiff's motion to certify the decision as a final judgment pursuant to Tenn. R. Civ. P. 54.02, and Plaintiff appealed presenting the following issues for our review:

1. Whether the summary judgment standard stated in *Hannan v. Alltel* or alternatively the standard set forth in [Tenn. Code Ann. §] 20-16-101 is applicable in this case, where the lawsuit was filed on May 17, 2010 and a Third Amended Complaint was filed in said lawsuit on November 26, 2014?

2. Whether an indictment, procured based entirely on false information provided by [Defendant's] personnel to law enforcement personnel, insulates [Defendant] from a claim of malicious prosecution where the law enforcement personnel repeat the false information to the Grand Jury and [none of Defendant's] personnel provided any direct verbal testimony to the Grand Jury, pursuant to *Kerney v. Aetna Casualty and Surety Co.* which provides that if an indictment is procured by fraud, false testimony, or the defendant did not believe in the guilt of the plaintiff, the grand jury indictment can be invalidated as showing probable cause?

3. Whether the Trial Court properly granted summary judgment dismissing the Plaintiff's false imprisonment claim based on the Trial Court's conclusion that the length of the alleged confinement was too short a duration to support a claim for false imprisonment?

4. Whether the Trial Court properly granted summary judgment dismissing the Plaintiff's negligent supervision claim where the Defendant's employees engaged in conduct in violation of the Defendant's policies, resulting in the arrest of the Plaintiff and where the Defendant produced no evidence relating to the nature and/or the description of any relevant training provided by the Defendant to its employees?[2]

---

[2] Plaintiff's brief lists a fifth issue in a section titled "Statement of the Issues Presented for Review." However, Plaintiff has not cited any authority or raised any argument in support of his fifth issue. Consequently, that issue has been waived. *See* Tenn. R. App. P. 27(a)(7) (requiring the appellant's brief to contain an argument setting forth the appellant's contentions and the reasons why these contentions require relief "with citations to the authorities and appropriate references to the record . . . relied on . . . ."); *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 614-15 (Tenn. 2015).

- 4 -

We review a trial court's decision on a motion for summary judgment de novo, without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to judgment as a matter of law. *Godfrey*, 90 S.W.3d at 695. Summary judgment should be granted at the trial court level when the undisputed facts and the inferences reasonably drawn from the undisputed facts support one conclusion: that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Plaintiff contends that the trial court erred by applying the incorrect standard for summary judgment. At the time of the trial court's ruling, two summary judgment standards existed in Tennessee. The standard established in *Hannan* applied to cases filed before July 1, 2011, and the statutory standard in Tenn. Code Ann. § 20-16-101 applied to cases filed after July 1, 2011. *See* 2011 Tenn. Pub. Acts Ch. 498, § 3; *Hannan*, 270 S.W.3d at 8-9. The trial court's order states that it would have granted summary judgment under both *Hannan* and Tenn. Code Ann. § 20-16-101. Because the trial court expressly stated that its decision would have been the same under either standard, Plaintiff's argument that the trial court used the wrong summary judgment standard is unavailing.

Plaintiff additionally argues that this court should not apply the new summary judgment standard that was recently adopted by the Tennessee Supreme Court in *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d at 264-65. After Plaintiff filed this

appeal, the Tennessee Supreme Court overruled *Hannan* and adopted a summary judgment standard that is substantially similar to the standard in Tenn. Code Ann. § 20-16-101. *Rye*, 477 S.W.3d at 264-65. Although the *Rye* standard applies retrospectively, *see id.* at 263 n.9, Plaintiff argues that this court should not apply the new standard because it would work a hardship on him.

Generally, judicial decisions overruling prior precedent are applied retrospectively. *See Hill v. City of Germantown*, 31 S.W.3d 234, 239 (Tenn. 2000); *Marshall v. Marshall*, 670 S.W.2d 213, 215 (Tenn. 1984). An exception to this principle exists only when retrospective application of a decision overruling an earlier decision "would work a hardship upon those who have justifiably relied upon the old precedent." *Marshall*, 670 S.W.2d at 215. This exception is narrow, and therefore "prospective only" application of an overruling decision "should be limited to a case in which the hardship on a party who has relied on the old rule outweighs the hardship on the party denied the benefit of the new rule . . . ."[3] *See id.* (citing Traynor, *Quo Vadis Prospective Overruling: A Question of Judicial Responsibility*, 28 Hastings L.J. 533 (1977)). Few cases can make such "rigorous demonstrations." *See id.* Plaintiff's case is not one of the few that can meet the standard discussed above. Accordingly, we will apply the *Rye* standard. *See Rye*, 477 S.W.3d at 264-65.

Under the *Rye* standard, the moving party who does not bear the burden of proof at trial may satisfy its burden of production by affirmatively negating an essential element of the nonmoving party's claim or by demonstrating that "the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Id.* at 264 (emphasis in original). The moving party must do more than make conclusory assertions that summary judgment is appropriate on this basis. *Id.* Instead, it must support its motion with a concise statement of material facts accompanied by specific citations to the record. *Id.* (quoting Tenn. R. Civ. P. 56.03).

When the moving party has made a properly-supported motion for summary judgment, the nonmoving party may not rest upon the allegations in its pleadings but must respond with affidavits or one of the other means in Tenn. R. Civ. P. 56. *Id.* at 265 (quoting Tenn. R. Civ. P. 56.06). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, it must demonstrate the existence of a genuine dispute of material fact. *See id.*

---

[3] Other rules apply to judicial decisions overruling a prior interpretation of a statute, *see Hill v. City of Germantown*, 31 S.W.3d 234, 239 (Tenn. 2000), but the *Rye* decision did not overrule an interpretation of a statute. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 263 n.9 (Tenn. 2015).

A fact is "material" if it must be decided in order to resolve the substantive claim or defense at which the motion for summary judgment is directed. *Byrd*, 847 S.W.2d at 215. An issue is "genuine" if a reasonable jury could legitimately resolve that fact in favor of one side or the other. *Id.* Thus, in order to survive a properly-supported motion for summary judgment, the nonmoving party must demonstrate "the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Rye*, 477 S.W.3d at 265.

## II. MALICIOUS PROSECUTION

In order to maintain a successful claim for malicious prosecution, a plaintiff must "establish that a criminal proceeding has been instituted by the defendants against the plaintiff, that such proceeding terminated in favor of the [plaintiff], that there was an absence of probable cause, and that there was malice or a primary purpose other than that of bringing the offender to justice." *Smith v. Harford Mut. Ins. Co.*, 751 S.W.2d 140, 143 (Tenn. Ct. App. 1987) (quoting *Sullivan v. Young*, 678 S.W.2d 906, 911 (Tenn. Ct. App. 1984)); *see Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247, 250 (Tenn. Ct. App. 1982).[4]

The issue in this case is whether there is a genuine dispute of material fact regarding whether Defendant's employees instituted a criminal proceeding against Plaintiff and whether there was probable cause to do so.

### A. INSTITUTION OF CRIMINAL PROCEEDINGS

As a general matter, parties are not liable for malicious prosecution simply because they give information to the police. *See Wykle v. Valley Fidelity Bank & Trust Co.*, 658 S.W.2d 96, 99 (Tenn. Ct. App. 1983); *Cohen v. Ferguson*, 336 S.W.2d 949, 954 (Tenn. Ct. App. 1959). However, as explained below, there is a distinction between situations in which private parties report what they believe to be true information to the police and situations in which private parties knowingly tell the police false information.

In *Cohen*, the owner of a junkyard called the police after his employees told him that a crime was being committed on his property. *Cohen*, 336 S.W.2d at 953. The police arrived, conducted an investigation, and arrested the plaintiff. *See id.* This court determined that the junkyard owner had not instituted the prosecution of the plaintiff by calling the police to investigate. *See id.* at 954. In so holding, this court stated:

---

[4] Tennessee cases often discuss malicious prosecution in terms of three elements by combining the requirement that the defendant institute a criminal proceeding with the requirement that the proceeding be instituted without probable cause. *See Bovat v. Nissan N. Am.*, No. M2013-00592-COA-R3-CV, 2013 WL 6021458, at *3 (Tenn. Ct. App. Nov. 8, 2013) (citing *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 248 (Tenn. 1992)); *see also Himmelfarb v. Allain*, 380 S.W.3d 35, 38 (Tenn. 2012).

One who gives to a third person, whether public official or private person, information of another's supposed criminal conduct or even accuses such other thereof, causes the institution of such proceedings as are brought by the third person. *The giving of the information or the making of the accusation, however, does not constitute a procurement of the proceedings which the third person initiates thereon if it is left to the uncontrolled choice of the third person to bring the proceedings or not as he may see fit.*

*Id.* at 954 (quoting Restatement (First) of Torts § 653 cmt. b (1938)) (emphasis added); *see Wylke*, 658 S.W.2d at 98-99 (quoting both *Cohen*, 658 S.W.2d at 954 and Restatement (First) of Torts § 653).

Notably, however, the court in *Cohen* also stated that "[o]ne who causes another's prosecution by false statements or misrepresentations, made to a police officer, with an improper motive, is liable for malicious prosecution, although he does not file a complaint or actually procure the prosecution." *Cohen*, 336 S.W.2d at 954 (quoting 54 C.J.S. Malicious Prosecution § 17, p. 970). As another comment to the Restatement affirms, a private person who knowingly provides false information to a public official is responsible for procuring the prosecution that follows:

A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving such information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. *Where a private person gives to a prosecuting officer information which he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief therein was one which a reasonable man would not entertain.* The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

*If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible and a prosecution based thereon is procured by the person giving the false information.* In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated expressed by direction, request, or pressure

- 8 -

of any kind was the determining factor in the official's decision to commence the prosecution *or that the information furnished by him upon which the official acted was known to be false*.

Restatement (First) of Torts § 653 cmt. g (emphasis added). The Second Restatement also contains this comment. *See* Restatement (Second) of Torts § 653 cmt. g (1977).

The Tennessee Supreme Court has adopted the distinction described in *Cohen* and the Restatement. *See Kauffman v. A.H. Robins, Co.*, 448 S.W.2d 400, 401 (Tenn. 1969). In *Kauffman*, the plaintiff, a pharmacist, filed a malicious prosecution claim against the defendant, a drug manufacturer. *Id.* According to the plaintiff, the drug manufacturer "falsely and maliciously" filed a complaint against her with the Tennessee Board of Pharmacy. *Id.* After determining that certain administrative actions could be the basis for malicious prosecution claims, the Supreme Court addressed the drug manufacturer's argument that it was not liable for malicious prosecution because the Board of Pharmacy had discretion to choose which complaints required additional action. *See id.* at 403. The Supreme Court rejected this argument, stating:

> This situation is not unlike that of reporting violations of the criminal law to law enforcement officers. Where facts are fully disclosed in good faith and with probable cause to believe they are true, a reporting party is not liable in an action for malicious prosecution if the public official erroneously institutes a criminal proceeding.
>
> However, when false or incomplete statements are made to a police officer, with an improper motive, one may be liable for malicious prosecution although he does not actually initiate the prosecution.
>
> In the instant case, [the drug manufacturer] did actually file a formal complaint with the Board in which it stated that it stood ready to attempt to prove the alleged violation of the pharmacy laws. *If this complaint was indeed false, and filed through malice, as alleged in plaintiff's declaration, the fact that the Board of Pharmacy was the agency which instituted and conducted the investigation and hearing does not excuse [the drug manufacturer]*.

*Id.* at 403-04 (citing *Cohen*, 336 S.W.2d at 949) (internal citations omitted; emphasis added). Thus, the fact that the Board of Pharmacy had discretion to decide which complaints to pursue did not excuse the defendant if the complaint the defendant filed was false and malicious. *See id.*

Based on the foregoing, there is a distinction between situations in which private parties report what they believe to be true information to the police and situations in

which private parties knowingly tell the police false information. *See id.*; *Cohen*, 336 S.W.2d at 954. In the former situation, the private party has not instituted the prosecution that results. In the latter situation, however, the private party has instituted the resulting prosecution because he or she has made it impossible for public officials to intelligently exercise their discretion to prosecute. *See Kauffman*, 448 S.W.2d at 403-04; *Cohen*, 336 S.W.2d at 954; Restatement (Second) of Torts § 653 cmt. g.

Here, Defendant's employees provided the police with information that Plaintiff had participated in passing a bad check on May 14 and that Plaintiff had assaulted Mr. Sewell with a box cutter on May 15. Regarding the institution of criminal proceedings, the relevant question is whether there is a genuine dispute of material fact as to whether this information was known to be false when it was given.

With respect to the statements related to his actions on May 14, Plaintiff testified that he was not at the store that day and insists that he "could present evidence at trial from which the finder of fact could conclude" that Defendant's employees knew he was not involved in the May 14 incident. However, under the *Rye* summary judgment standard, such a response is insufficient to create a genuine dispute of material fact. *See Rye*, 477 S.W.3d at 265 (stating that the nonmovant must respond by setting forth specific facts demonstrating that there is a genuine issue for trial at the summary judgment stage).

Furthermore, although Plaintiff testified that he was not present at Defendant's store on May 14, this evidence does not create a dispute of fact about whether Defendant's employees *believed* that Plaintiff was involved in the May 14 incident. Even if a jury accepted Plaintiff's testimony that he was not present at Defendant's store on May 14, it would not create a dispute of fact about whether Defendant's employees *believed*, correctly or incorrectly, that he was. Thus, Plaintiff has failed to create a dispute of fact concerning whether Defendant's employees *knowingly* gave false information to the police regarding their belief that Plaintiff was involved in the May 14 forged check incident.[5]

---

[5] Although Plaintiff failed to create a genuine dispute of material fact concerning the forged check charges, we have determined that Plaintiff can maintain a malicious prosecution claim based on the separate assault charge, assuming he can create a genuine dispute of material fact concerning that charge. This court has found only one Tennessee case that directly addresses this question: *Swepson v. Davis*, 70 S.W. 65, 71 (Tenn. 1902). In *Swepson*, the Tennessee Supreme Court stated that in order to determine whether a prior civil proceeding was terminated in one party's favor, courts must look to the outcome of the proceeding as a whole rather than to the outcome of each claim asserted in that proceeding. *Id.* at 69. When addressing a petition to rehear the case, the Supreme Court discussed additional authority and stated:

> if [the plaintiff in the malicious prosecution action] had been successful in the original case, and obtained a judgment in his favor therein, he could sustain his action in this case

(continued…)

With respect to the statements that Plaintiff assaulted Mr. Sewell with a box cutter on May 15, Plaintiff presented direct evidence – his own testimony as an eyewitness of and participant in the events of May 15 – that he did not threaten anyone with a box cutter. While this evidence may or may not be more credible or more persuasive than the testimony of Mr. Sewell and Ms. Scharff, it is not for us to make such a determination at the summary judgment stage. *See Byrd*, 847 S.W.2d at 216. More importantly, if a jury accepts his testimony that he did not threaten Mr. Sewell with a box cutter, then the jury could conclude that Mr. Sewell and Ms. Scharff knew they were giving the police false information about this incident. Consequently, there is a genuine dispute of fact as to whether Defendant's employees instituted criminal proceedings against Plaintiff by knowingly providing the police with false information about Plaintiff's actions on May 15, 2009.[6]

---

if he could show that *any one of the charges made in the original suit was false and made maliciously and without probable cause*, and it would not be required of him to show each and every charge to be false, malicious, and without probable cause.

*Id.* at 71 (emphasis added).

Thus, if all of the claims in the underlying proceeding terminated in the plaintiff's favor, the plaintiff may maintain an action for malicious prosecution based on any one of those claims, as long as there was no probable cause for the claims or charge in question. *See id.* at 69, 71; *see also Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) ("[P]robable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause is lacking."); *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007) ("[A] defendant initiating criminal proceedings on multiple charges is not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges was justified.").

[6] In a footnote in *Thompson v. Hamm*, this court stated that "[t]he law is clear that the provision of information is insufficient to support a claim for malicious prosecution, whether the information is truthful or false." *Thompson v. Hamm*, No. W2015-00004-COA-R3-CV, 2015 WL 7234539, at *6 n.9 (Tenn. Ct. App. Nov. 17, 2015), *no perm. app. filed*. We believe *Thompson* is distinguishable because there is no indication that the plaintiff in *Thompson* provided any evidence that the defendant knew the information he gave to the relevant authorities was false at the time he gave it. Instead, the plaintiff merely presented an allegation of such. In *Thompson*, the plaintiff and defendant both worked for the City of Memphis, and the defendant provided the City with an affidavit describing instances in which the plaintiff engaged in discrimination during the hiring process. *See id.* at *1. The City hired a law firm to conduct an investigation and later decided to institute disciplinary proceedings against the plaintiff. *See id.* Ultimately, the proceedings terminated in the plaintiff's favor, and the plaintiff filed a malicious prosecution action against the defendant. *See id.* at *2. The plaintiff denied that he had ever engaged in discrimination and contended that the defendant provided the City with "a false, malicious affidavit" intended to cause the plaintiff to lose his job. *Id.* at *1, *6 n.8. However, despite these allegations, the *Thompson* decision does not indicate that the plaintiff provided any **evidence** that the defendant knew his affidavit was false at the time it was given to the City. *See id.* Thus, the *Thompson* court's statement that providing information never supports a claim for malicious prosecution was not made in reference to a situation in which there was evidence that one party believed the information it provided to the authorities was false at the time it was given. *See id.* In this case, however, if a jury believes Plaintiff's testimony that

(continued…)

- 11 -

The foregoing notwithstanding, Defendant insists that it cannot be held liable for malicious prosecution because "a private entity may be held liable for malicious prosecution only where it initiated the proceedings by exercising 'some control over the prosecution.'" This contention is based on *Pera v. Kroger Co.*, 674 S.W.2d 715, 722-23 (Tenn. 1984) and cases that cite *Pera.*

However, *Pera* addresses liability for *continuing* rather than *initiating* a criminal proceeding. In *Pera,* the defendant instituted the criminal proceeding by causing "a criminal warrant to be issued against the plaintiff . . . ." *Id.* at 718. The Supreme Court concluded that "there was probable cause for [the defendant] to institute the criminal proceedings and have a warrant issued." *Id.* at 722. However, the Court also stated that, despite the existence of probable cause to *institute* the proceeding, liability might still result if the defendant *continued* the prosecution after it became known that the plaintiff had not committed a crime. *See id.* ("A more serious question arises, however, as to the 'continuation' of the prosecution after it became known that there had been some sort of misunderstanding or 'bank error' . . . .").

According to the Supreme Court, "[i]t is well settled in the law of torts that even though one has probable cause to initiate criminal charges, there can be liability for the malicious continuation of a criminal proceeding." *Id.*; *see* Restatement (Second) of Torts § 655 (1977). It is in this context that the Court stated: "In order for liability to be imposed *under this principle* [i.e. the principle of liability for continuing a prosecution rather than initiating one], however, the prosecuting witness must have some control over the prosecution." *See Pera*, 674 S.W.2d at 722 (emphasis added). Ultimately, the Supreme Court affirmed the trial court's judgment in favor of the defendant because "the evidence [did] not justify a conclusion that [the defendant] was sufficiently legally responsible for the *continuation* of the prosecution or that it had sufficient control over the proceedings to render it liable under the principles of [Restatement (Second) of Torts § 655]." *Id.* at 725 (emphasis added).

Consequently, taking an active part in or exercising control over a prosecution is a requirement when liability for malicious prosecution is based on the continuation of a prosecution. *See id.* at 722-25; *compare* Restatement (Second) of Torts § 654 (1977) ("Institution of Criminal Proceedings"), *with* Restatement (Second) of Torts § 655 (1977) ("Continuing Criminal Proceedings"). In contrast, if a party *institutes* a prosecution without probable cause, then that initiation is sufficient to subject the party to liability if all the other elements of malicious prosecution are met. *See id.* at 718, 722; *Kerney*, 648

---

he did not threaten Mr. Sewell with a box cutter, then Defendant's employees provided the police with false information and **knew that this information was false when they provided it.**

S.W.2d at 250 (listing the elements of malicious prosecution); *see also* Restatement (Second) of Torts § 654.

For the foregoing reasons, we shall consider whether or not probable cause was lacking at the outset of the underlying criminal proceedings.

## B. LACK OF PROBABLE CAUSE

In addition to showing that the defendant instituted criminal proceedings against them, plaintiffs who assert claims of malicious prosecution must show that the proceedings were instituted without probable cause. *See Himmelfarb v. Allain*, 380 S.W.3d 35, 38 (Tenn. 2012).

"Properly defined, probable cause requires only the existence of such facts and circumstances sufficient to excite in a reasonable mind the belief that the accused is guilty of a crime charged." *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 248 (Tenn. 1992). When we deal with probable cause, we are concerned with probabilities rather than certainty. *See State v. Bell*, 429 S.W.3d 524, 530 (Tenn. 2014). Thus, "[i]n the context of an action for malicious prosecution, the question is not whether the plaintiff was actually guilty of the crime alleged against him, but whether reasonable grounds existed for the defendant's belief that he was guilty." *Smith v. Kwik Fuel Ctr.*, No. E2005-00741-COA-R3-CV, 2006 WL 770469, at *7 (Tenn. Ct. App. Mar. 27, 2006) (citing *Peoples Protective Life Ins. Co. v. Neuhoff*, 407 S.W.2d 190, 199 (Tenn. Ct. App. 1966)).

Generally, the existence of probable cause is a factual inquiry that must be assessed based on an objective examination of the surrounding circumstances. *Roberts*, 842 S.W.2d at 248. However, a grand jury's indictment can establish the existence of probable cause as a matter of law. *Bovat v. Nissan N. Am.*, No. M2013-00592-COA-R3-CV, 2013 WL 6021458, at *3 (Tenn. Ct. App. Nov. 8, 2013); *see Crowe v. Bradley Equipment Rental & Sales, Inc.*, No. E2008-02744-COA-R3-CV, 2010 WL 1241550, at *5 (Tenn. Ct. App. Mar. 31, 2010). In both *Bovat* and *Crowe,* this court stated that "[a]n indictment by a grand jury equates to a finding of probable cause." *Crowe*, 2010 WL 1241550, at *5; *Bovat*, 2013 WL 6021458, at *3. Despite the conclusive nature of these statements in *Bovat* and *Crowe*, earlier Tennessee cases stated a different rule. *See Spicer v. Thompson*, M2002-03110-COA-R3-CV, 2004 WL 1531431, at *26 (Tenn. Ct. App. July 7, 2004); *Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247, 252 (Tenn. Ct. App. 1982). In *Kerney* and *Spicer*, this court stated:

> We decline the defendants' invitation to adopt the rule that "the indictment of the accused by a grand jury, if unexplained, is evidence that the person who initiated the proceedings had probable cause therefor." 52 Am. Jur. 2d *Malicious Prosecution* § 177 (1970). This rule is one of many rules on the

subject and we are not convinced that it is either the best rule or that it is in conformity with the law of malicious prosecution in Tennessee. Where a finding is procured by fraud, false testimony, or where the defendant did not believe in the guilt of the plaintiff, an indictment is not sufficient to bar a suit for malicious prosecution. *Johnston v. Zale Corporation*, 484 S.W.2d 531 (Tenn. 1972). Neither is the advice of counsel a defense where the defendant has failed to make a full and honest disclosure of all the facts. *Mitchell v. George*, 63 Tenn. App. 408, 474 S.W.2d 131 (1971).

*See Spicer*, 2004 WL 1531431, at *26 (quoting *Kerney*, 648 S.W.2d at 252).

Thus, according to *Spicer* and *Kerney*, indictment by a grand jury did not conclusively establish the existence of probable cause. *See id.* Instead, the effect of a grand jury's indictment could be rebutted by evidence that it was "procured by fraud, false testimony, or where the defendant did not believe in the guilt of the plaintiff, an indictment is not sufficient to bar a suit for malicious prosecution." *Kerney*, 648 S.W.2d at 252.

The tension between early and recent decisions has not escaped notice. *See Powers v. Wallen*, No. 3:12-CV-96, 2014 WL 1491213, at *14 (E.D. Tenn. Apr. 15, 2014). After reviewing the relevant caselaw, we have determined that recent Tennessee cases did not abandon the rule that a grand jury's indictment could be rebutted by evidence of fraud. Instead, the recent cases regarded the grand jury's indictment as conclusive proof of probable cause **because the plaintiffs in those cases did not present any evidence to rebut the indictment**. For example, when the defendant in *Bovat* filed a motion for summary judgment, the plaintiff failed to file a statement of disputed facts or cite to affidavits or deposition testimony in response. *See Bovat*, 2013 WL 6021458, at *1. Because of that plaintiff's failure to comply with the rules governing motions for summary judgment, this court determined that all of the defendant's facts were admitted. *Id.* at *3. Similarly, the plaintiff in *Crowe* did not file a response to the defendants' motion for summary judgment. *See Crowe*, 2010 WL 1241550, at *3. As a result, this court did not consider whether a dispute existed concerning any material fact. *Id.*

Therefore, a grand jury's indictment creates a rebuttable presumption that probable cause to institute the criminal proceeding existed unless the indictment was procured by fraud or by a defendant who did not believe in the guilt of the plaintiff. *See Kerney*, 648 S.W.2d at 252. At the summary judgment stage, evidence of a grand jury's indictment negates the element of lack of probable cause if the indictment is uncontested. *See Bovat*, 2013 WL 6021458, at *3; *Crowe*, 2010 WL 1241550, at *3. To avoid this result, the nonmovant must produce evidence, at the summary judgment stage, that the indictment was procured by fraud. *See Rye*, 477 S.W.3d at 264-65. If the nonmovant fails to do so, then the fact that a grand jury issued an indictment "equates to a finding of probable cause." *See Bovat*, 2013 WL 6021458, at *3.

In order to show that an indictment was procured by "fraud, false testimony, or where the defendant did not believe in the guilt of the plaintiff," parties must demonstrate that the false testimony in question was given knowingly or with reckless disregard for its truth. *Kerney*, 648 S.W.2d at 252; *see Gray v. 26th Judicial District Drug Task Force*, No. 02A01-9609-CV-00218, 1997 WL 379141, at *4 (Tenn. Ct. App. July 8, 1997) ("There is no evidence in the record indicating that either the General Sessions Court determination or the grand jury indictment were procured by fraud, *perjury*, or other corrupt means." (emphasis added)); s*ee also Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) ("[A]n exception [to the rule that a grand jury's indictment establishes probable cause] applies where the indictment was obtained wrongfully by defendant police officers who knowingly presented false testimony to the grand jury. This exception also covers officers who testify with a reckless disregard for the truth." (internal citations omitted)). Requiring this level of intent is appropriate because the standard for determining whether probable cause exists is not whether the accused is actually guilty of the crime alleged but whether there were reasonable grounds for the *belief* that the accused was guilty. *See Kwik Fuel Ctr.*, 2006 WL 770469, at *7. Allowing parties to rebut the indictment of a grand jury by demonstrating that the indictment was based on evidence that was false because of an innocent mistake would be inconsistent with the standard for probable cause.[7]

As previously discussed, there is a genuine dispute of material fact concerning whether Defendant's employees knowingly gave the police false information when they said that Plaintiff assaulted Mr. Sewell with a box cutter. At the summary judgment stage, it is reasonable to infer that the statements of Defendant's employees were presented to the grand jury. Consequently, Plaintiff has presented evidence that the grand jury's indictment was procured by fraud or by statements that the Defendant's employees did not believe were true. *See Kerney*, 648 S.W.2d at 252.

Without the grand jury's indictment, the existence of probable cause is a factual inquiry that must be assessed based on an objective examination of the surrounding

---

[7] This approach is consistent with the Tennessee Supreme Court's approach when assessing other evidence that establishes the existence of probable cause: affidavits accompanying applications for a warrant. *See State v. Little*, 560 S.W.2d 403, 407 (Tenn. 1978). In *Little*, the Supreme Court stated:

> [T]here are two circumstances that authorize the impeachment of an affidavit sufficient on its face, (1) a false statement *made with intent to deceive the Court*, whether material or immaterial to the issue of probable cause, and (2) a false statement, essential to the establishment of probable cause, *recklessly made*. Recklessness may be established by showing that a statement was false when made and that affiant did not have reasonable grounds for believing it, at that time.

*Id.* (emphasis added).

circumstances. *Roberts*, 842 S.W.2d at 248. As previously discussed, Defendant's employees and Plaintiff have different accounts of the events of May 15, 2009. If a jury accepts Plaintiff's account, then it could find that Defendant's employees did not witness or believe that Plaintiff assaulted Mr. Sewell with a box cutter. Consequently, there is a genuine dispute about whether there was probable cause to institute these proceedings, and summary dismissal of Plaintiff's malicious prosecution claim was not appropriate.[8]

### III. NEGLIGENT SUPERVISION

Plaintiff contends that the trial court erred by dismissing his claim for negligent supervision. The trial court dismissed this claim because it was procedurally unnecessary. As stated in the trial court's Rule 60 order:

> The Court considers [Defendant's] vicarious liability for the actions of its employees on the store premises on May 15, 2009 to be a matter that appears without substantial controversy, within the meaning of [Tenn. R. Civ. P. 56.05]. To the extent that the Summary Judgment Order does not make the Court's position clear, with this order the Court reiterates its position on the question of [Defendant's] vicarious liability. Accordingly, the Court does not believe it is procedurally necessary for [Plaintiff] to prosecute further his claim of negligent supervision, and the Court would favorably consider instructing the jury that [Defendant] was vicariously liable for the actions of its employees if the jury were to find those employees liable for assault and battery.

Although the trial court did not dismiss Plaintiff's claim for assault and battery, the court apparently considered it unnecessary for Plaintiff to pursue his negligent supervision claim because the court had already determined that Defendant was vicariously liable for its employees' actions. As a result, the trial court dismissed Plaintiff's negligent supervision claim. This was error.

Negligent supervision and respondeat superior are distinct legal claims that, if proven, impose liability on an employer in different ways. *See Overland v. Swifty Oil Co., Inc.*, No. M2000-02192-COA-R3-CV, 2001 WL 856580, at *3, *5 (Tenn. Ct. App. July 31, 2001) (treating negligent supervision and respondeat superior as two different claims). Under the doctrine of respondeat superior, an employer is vicariously liable for the actions of its employees while acting within the course and scope of their employment. *See Russell v. City of Memphis*, 106 S.W.3d 655, 657 (Tenn. Ct. App. 2002)

---

[8] A showing of lack of probable cause gives rise to a rebuttable presumption of malice. *Smith v. Hartford Mut. Ins. Co.*, 751 S.W.2d 140, 143 (Tenn. Ct. App. 1987) (quoting *Sullivan v. Young*, 678 S.W.2d 906, 911 (Tenn. Ct. App. 1984)).

(citing *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liability Co.*, 840 S.W.2d 933, 936-37 (Tenn. Ct. App. 1992)).

In contrast, under a claim of negligent supervision, an employer is directly liable for breaching its own independent duty to hire competent employees and supervise them appropriately. *See Wicks v. Vanderbilt Univ.*, No. M2006-00613-COA-R3-CV, 2007 WL 858780, at *13 (Tenn. Ct. App. Mar. 21, 2007); *Gates v. McQuiddy Office Products*, No. 02A01-9410-CV-00240, 1995 WL 650128, at *1 (Tenn. Ct. App. Nov. 2, 1995) ("The torts of negligent hiring and negligent supervision are based on the principle that a person conducting an activity through employees is liable for harm resulting from negligent conduct in the employment of improper persons or instrumentalities in the work involving risk of harm to others."); *see also Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008) (noting that instead of asserting a claim for vicarious liability, the plaintiff was asserting "that the Diocese [had] *direct liability* for the negligent hiring, supervision, and retention of [an employee]." (emphasis added)). Consequently, claims based on negligent supervision are independent of claims based on respondeat superior, and the existence of one claim does not render the other claim superfluous or unnecessary. *See Catholic Bishop*, 306 S.W.3d at 717; *Wicks*, 2007 WL 858780, at *13; *Overland*, 2001 WL 856580, at *3.

The foregoing notwithstanding, Defendant argues that summary judgment was appropriate because "the undisputed record establishes that [Defendant] trained Mr. Sewell on the appropriate handling of shoplifters." In his deposition, Mr. Sewell testified that Defendant trained him but admitted that the manner in which he confronted Plaintiff on May 15 was not compliant with that training. Although this testimony is undisputed, Plaintiff's claim of negligent supervision is not limited to Mr. Sewell or to Mr. Sewell's behavior when he confronted Plaintiff. Several of Defendant's other employees were involved in this incident, and Defendant has not cited to any evidence about the training or supervision of those employees.

Respondeat superior and negligent supervision are distinct legal theories, and plaintiffs should be allowed to pursue both of them simultaneously. As a result, the trial court erred when it dismissed Plaintiff's negligent supervision claim.[9]

---

[9] This court recently discussed the distinction between respondeat superior and negligent entrustment when determining whether to adopt the so-called "preemption rule," which prohibits plaintiffs from proceeding against an employer on direct negligence claims like negligent supervision when the employer has admitted vicarious liability for the actions of its agent. *See Jones v. Windham*, No. W2015-00973-COA-R10-CV, 2016 WL 943722, at *4 (Tenn. Ct. App. Mar. 11, 2016), *perm. app. filed* (Tenn. May 10, 2016). After discussing the rationale for the preemption rule and caselaw from both Tennessee and other jurisdictions, this court concluded that the preemption rule was not appropriate for Tennessee. *See id.* at *4-9. In so doing, this court emphasized that vicarious liability "represents an independent claim that is separate from other theories of liability asserted against a principal." *Id.* at *5. Although the defendants in *Jones* recently filed a Rule 11 application for permission to appeal with the

(continued…)

- 17 -

## IV. FALSE IMPRISONMENT

Plaintiff also contends that the trial court erred by dismissing his claim for false imprisonment.

"False imprisonment" is "[a]n act which, directly or indirectly, is a legal cause of confinement of another within boundaries fixed by the actor for any time, no matter how short in duration . . . ." *Little Stores v. Isenberg*, 172 S.W.2d 13, 16 (Tenn. Ct. App. 1943) (quoting Restatement (First) of Torts § 35 (1934)); *see (Blue) Star Service, Inc. v. McCurdy*, 251 S.W.2d 139, 142 (Tenn. Ct. App. 1952). "The elements of the tort of false imprisonment are (1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint." *Newsom v. Thalhimer Bros., Inc.*, 901 S.W.2d 365, 367 (Tenn. Ct. App. 1994) (citing *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990)).

In order to prove the element of detention, plaintiffs must present evidence that they were "restrained or confined through the defendant's exercise of force, threats of force, or assertion of authority." *Richards v. O'Connor Management*, No. 01A01-9708-CV-00379, 1998 WL 151392, at *4 (Tenn. Ct. App. Apr. 3, 1998). It is not enough for a plaintiff to feel "mentally restrained" by the defendant's actions. *Newsom*, 901 S.W.2d at 368. Instead, "[t]he evidence must establish a restraint against the plaintiff's will, as where she yields to force, to the threat of force or to the assertion of authority." *Id.* (quoting *Faniel v. Chesapeake & Potomac Telephone Co.*, 404 A.2d 147, 151-52 (D.C. 1979)). The physical force used to detain a plaintiff need not be overpowering if the plaintiff submits to it. *See Little Stores*, 172 S.W.2d at 16 ("This lady was taken by the arm and walked back into the store in front of the clerk, could have been the belief of the jury."). However, if the plaintiff does not submit, the force must be such that an actual restraint occurs. *See Newsom*, 901 S.W.2d at 368 ("a restraint against the plaintiff's will, as where she *yields* to force . . . ." (emphasis added)); Restatement (Second) of Torts § 39 (1965) ("The confinement may be by overpowering physical force, or by submission to physical force.").

Here, there is no allegation or evidence that Plaintiff was detained by threats or a show of authority. To the contrary, any statements or displays of authority that Mr. Sewell made only caused Plaintiff to begin leaving the store. Consequently, any restraint or confinement could only have been accomplished by physical force.

---

Tennessee Supreme Court, Defendant has never raised the preemption rule or argued that it applies to this case. Further, Defendant has not admitted vicarious liability for the actions of its employees. Consequently, even if the Supreme Court determines that Tennessee should adopt the preemption rule, the rule would not apply in this case. *See id.* at *13 ("Certainly, when employers do not admit *respondeat superior* liability, plaintiffs should be entitled to pursue alternative theories of recovery, including negligent hiring, negligent entrustment, and/or supervision.") (Gibson, J. dissenting).

In his deposition, Plaintiff was asked: "But [Defendant's employees] never held you against your will; is that right?" He responded: "They tried to." Plaintiff also testified that when he walked toward the door of the store Mr. Sewell "began to push [him] back into the store." According to Plaintiff, Mr. Sewell "turned his back to the door facing [Plaintiff] and tried to prevent [Plaintiff] from exiting the store." Plaintiff also testified that Mr. Sewell pushed him from behind and pulled on his left arm as Plaintiff was trying to enter his truck.

In granting Defendant's motion for summary judgment, the trial court focused on Plaintiff's testimony that Defendant's employees "tried to" hold him against his will. Based on this testimony, the trial court concluded that it was undisputed that Plaintiff was not "in fact restrained, confined or detained" at Defendant's store. Plaintiff contends that his testimony cannot constitute a legal determination that he was not restrained or confined because restraint or confinement can be for any length of time, no matter how short. *See (Blue) Star Service*, 251 S.W.2d at 142; *Little Stores*, 172 S.W.2d at 16.

Like the trial court, we do not view Plaintiff's testimony as a legal opinion concerning the definition of false imprisonment. Rather, when viewed in the light most favorable to the Plaintiff, the entirety of Plaintiff's testimony and the undisputed facts clearly establish that Plaintiff was able to leave the store's premises. Plaintiff was not restrained by the physical force applied to him, nor did he submit to it.[10] Consequently, Plaintiff did not provide evidence that he was restrained against his will "as where [he] yields to force, to the threat of force or to the assertion of authority." *See Newsom*, 901 S.W.2d at 368; Restatement (Second) of Torts § 39. As a result, there is no genuine issue as to any material fact regarding Plaintiff's restraint or detention, and the trial court did not err by dismissing this claim.

## IN CONCLUSION

The judgment of the trial court dismissing Plaintiff's claims of malicious prosecution and negligent supervision is reversed. In all other respects, the trial court's judgment is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs are assessed equally, and jointly and severally, against Ronnie Gordon and Tractor Supply Company.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[10] To the extent physical force was exercised on Plaintiff without his consent, we note that the trial court did not dismiss Plaintiff's claim for assault and battery and that decision was not appealed.